STATE EX REL. SINCLAIR *v*. MARION COUNTY CRIMINAL COURT DIVISION ONE.

[No. 0-707. Filed January 21, 1965.]

*Burns C. Sinclair, pro se.*

ACHOR, J.—Relator was convicted in 1941 for the offense of rape upon two female children ages 11 and 9 respectively, and was sentenced to life imprisonment.

Relator filed a petition for writ of error coram nobis in the respondent court on October 4, 1962. Following the filing of said petition, relator was advised that the public defender did not intend to appear in his defense. Thereafter, on March 1, 1963, relator made a plea to the respondent court for appointment of counsel. On July 5, 1963, after a process of striking, the Honorable Eugene M. Fife, Jr. was appointed special judge in the cause. Thereafter, he disqualified himself in the cause and Mr. Scott Ging was appointed special judge, on November 6, 1963.

Relator now asks for a writ of mandate requiring the respondent to appoint special counsel to represent him in said cause and for an order requiring respondent to set the cause for trial and determination.

Before considering granting the extraordinary relief requested by relator, we examine the allegations contained in his cause of action to determine whether there is any showing of merit therein. Relator alleges:

"A.

. . .

B.

Petitioner was not afforded the opportunity to be confronted by, and confront, his accuser face to face in open court, directly in violation of his rights as expressed in Article 1, Section 14, of the Indiana State Constitution.

C.

Petitioner had no counsel at the time of the trial, or was there a court appointed counsel at the time of his trial and petitioner was without means to employ an attorney.

D.

No witness identified the petitioner, the contention is that appellant is being deprived of his liberty without due process of law in controvention of the Constitution of the United States.

E.

There is no order book entries or was any made in this case under number 75067, as so stated on Dec. 27, 1943, from the clerk of the Court, a Mr. Jack Tilton.

F.

Through the State's failure to impanel any witnesses, petitioner was denied the right to cross-examine the accusing witness, if any, as in the Sixth Amendment of the Constitution of the United States.

G.

There is no corpus delicti in this case that any crime was committed, to justify a conviction.

H.

Petitioner has a faulty, defective affidavit.

I.

Petitioner was denied a transcript. There is none and no official court reporter to witness or take minutes of this cause. Thus denying the equal right to make an appeal to the Indiana Supreme Court. As to Rule 1-11 of the Supreme Court of Indiana, and petitioner has been denied a constitutional right; . . ."

Since under ordinary circumstances it is the duty of the public defender of the state of Indiana to represent pauper prisoners who, under the law, are entitled to some post conviction remedy, this court issued an order to the public defender requiring him to show cause why he had declined, if it be a fact, to represent the petitioner, relator herein, in the proceeding in error coram nobis now pending in the respondent court. The public defender has filed his return, to which he has attached as exhibits in support thereof certified copies of the minutes made at the time of the trial, the prisoner's statements made at the penitentiary, and the proceedings in the federal district court. We have examined these exhibits and find that they verify the facts as stated in the return. The return reveals a remarkable series of facts. It discloses that since the time of his conviction relator has made a career of filing numerous actions in the state and federal courts, wherein he has both falsified the facts and presented matters which do not constitute reversible error.

Specifically, and in part only, the response of the public defender discloses:

1. In 1944 relator filed a petition for writ of error coram nobis which was heard and determined adversely to the relator.

2. In 1945 relator filed a writ of habeas corpus against Alfred F. Dowd, Warden of the Indiana State Prison, in the U. S. District Court, South Bend Division, which matter was heard by the Honorable Luther M. Swygert on May 4, 1945. At the conclusion of that hearing, which went into every aspect of the case of which relator now makes complaint, the court denied relator's petition for habeas corpus.

3. Thereafter relator filed a second petition in forma pauperis for a writ of habeas corpus before the same court, which petition was denied by the Honor-

able Luther M. Swygert at Ft. Wayne, Indiana, on December 6, 1945, on the grounds that the legality of petitioner's detention was determined by said court in a prior application for writ of habeas corpus, heard in South Bend, in Civil No. 537.

4. Thereafter, on December 10, 1949, relator filed a second petition for writ of error coram nobis, which petition was dismissed on motion of the state.

The state is now confronted with a third petition for writ of error coram nobis, in which the relator, as previously stated, asserts that he has been denied certain constitutional rights in connection with the trial which resulted in his conviction and with the failure to preserve a record of that proceedings by which he could prosecute an appeal therefrom. The facts with regard to each of these contentions are specifically set forth in the reply of the public defender on order to show cause, as follows:

"B.

Under Specification B Sinclair says he was not afforded the opportunity to be confronted by his accuser in open court in violation of his rights under Article 1, § 14, of the Indiana State Constitution. I quote Sinclair's own statement (made at the penitentiary): 'I was brought to trail. During the trial two children, Levana Watson and Geneva Watson, ages 11 and 9 years took the stand against me and swore that I had several intercourses with them during the past year. . . . I was tried by the judge, and found guilty.' Also, from the Judge's statement, the Prosecutor's statement, and the testimony before the Honorable Luther M. Swygert, Judge of U. S. District Court, it is shown he did see the accusers face to face in open court.

C.

In Specification C Sinclair claims he had no counsel.

1. This is in conflict with Judge Dewey E. Myers' minutes hereinbefore set out which indi-

cates Russell J. Dean was attorney for defendant, Burns Sinclair.

2. It is in direct conflict with the commitment to the Indiana State Prison that shows Russell Dean was his attorney.

3. It is in direct conflict with Sinclair's testimony on May 4, 1945, which showed that Russell J. Dean was in the Marion County Criminal Court on the morning before the trial started.

4. It is in direct conflict with the questions by Judge Swygert to Dewey E. Myers, hereinbefore set out on pages 6 to 9 of this report, wherein Dewey A. Myers answered, 'He had counsel when he appeared [in] court and he also had counsel when he came into court on the writ of error coram nobis.'

### D.

Under Specification D Sinclair says no witnesses identified him, thus without due process of law. This contention is in direct conflict with the following:

1. His own statement at the prison, wherein he stated: 'On Feb. 3rd I was brought to trial. During my trial the two children, Levana Watson, age 11 and Geneva Watson, age 9 took the stand against me and swore that I had had several intercourses with them during the past year. . . .' This statement is not compatible with his present contention.

. . .

4. The statement of Dewey E. Myers in the Federal District Court as hereinbefore set out. See page 6 of this report wherein Dewey E. Myers stated: '. . . Russell Dean appeared as his counsel and two or three witnesses appeared for the state and Dr. Beatty and the little girls who were subpoenaed in by the prosecuting attorney. Their evidence was heard and Mr. Dean who represented Mr. Sinclair asked Mr. Sinclair a few questions and I asked if they had any more to say and they said they did not. At that time I passed sentence. He had been in jail about two months as I remember.'

### E.

Under Specification E. Sinclair says that there are no Order Book entries available. This conten-

tion is best answered by the following testimony in the U. S. District Court on May 4, 1945, as follows:

Judge Swygert: 'What is that letter?'

Sinclair: 'This came from the prosecuting attorney's office. A. J. Tilsen, Clerk of the Circuit Court, Marion County, Indianapolis, Indiana, December 27, 1945. Burns Sinclair, 21790, Box 41, Michigan City, Indiana, Dear Sir: This office is in receipt of a letter from your brother Rollie requesting certified copies of the procedure in your case. For many months prior to my taking office in January 1, 1943 there has been no Order Book entries upon which to make certified copies. Your request will require filing of motions and other legal steps and I suggest that you obtain the services of an attorney unless you are legally capable of preparing said motions yourself. Very truly yours, A. Jack Tilsen, Clerk.'

Coughlin: 'If Your Honor please, so you can get this picture, our law in Indiana, and it is the latest, that is the judgment when the court pronounces judgment. After that it becomes the duty of the county clerk to enter it up in the record book. We had a county clerk there that probably didn't have enough appropriation for that and also felt it wasn't his duty to render that and for a long span of time, I would say a year, there weren't any judgments entered in the record book, but they were up in the judge's docket book.'

Myers: 'And also on the clerk's pad all the way through.'

Coughlin: 'Finally the clerk of the court was told his duties and now they are making the proper record.'

Judge Swygert: 'The fact that some clerk didn't do his duty as far as writing up what happened, that isn't part of your Constitutional guarantees, Mr. Sinclair.'

The affidavit herein, the judge's docket sheet and a copy of the original commitment all show the judgment of the court.

### F.

Under Specification F Sinclair claims that the State's failure to impanel any witnesses thereby denied him the right to cross-examine them and was in violation of the Sixth Amendment to the U. S. Constitution. This contention is false for the following reasons:

1. For the same reasons set out in Specification D hereof, 1, 2, and 3.

2. By reason of the evidence of Dewey E. Myers as questioned by Judge Swygert:

Q. 'Did these people that testified against Mr. Sinclair, they were sworn and took the stand?'

A. 'That's right.'

Judge Swygert: 'Were they cross-examined by Mr. Dean as you remember?'

A. 'Yes, sir.'

Thus, it is clear that the State's witnesses were present, testified, and were cross-examined.

### G.

Under Specification G Sinclair claims there was no corpus delicti proved in this case. Without going further than his own statement, it is shown that the two children, Levana Watson and Geneva Watson, ages 11 and 9 years, took the stand against him and swore that he had several intercourses with them during the year. This sufficiently proved the corpus delicti.

### H.

Under Specification H Sinclair claims the affidavit was defective. It has already been set out in detail herein and his contention cannot prevail."

From the above statement we can only conclude that the public defender could find no material defect in the affidavit. Relator has not attempted to state specifically wherein he considers that the affidavit was defective. And this court having examined the affidavit find it to be sufficient.

With regard to Specification I, Sinclair claims that he was denied a transcript and, further, that the court

failed to follow the procedure prescribed in Rule 1-11 of this court and, therefore, for both of the previously stated reasons, relator was denied his constitutional right. We find no reversible error with regard to either of these contentions. With regard to relator's alleged denial of a transcript, we note that the evidence indicates that a proper transcript of the record could have been prepared for relator from the memorandum of the court's docket and the notations on the clerk's pad on the filing of a proper motion therefor. In any event, the issue was fully adjudicated in the federal district court from which decision there was no appeal.

Rule 1-11, *supra,* has no application to this case and therefore it is obvious that relator was denied no constitutional rights with respect to it. The rule applies only under circumstances where there is a plea of guilty. In this case the petitioner (relator) pleaded *not* guilty.

From the facts above presented, it is apparent that relator's petition for proceedings in error coram nobis are based upon fictitious, false and fabricated grounds. Therefore, the petition for writ of mandate herein sought by relator is denied.

This brazen and continued harassment of our courts by the relator must be terminated.[1] *Spires* v. *State* (1963), 244 Ind. 82, 189 N. E. 2d 413.

---

1. The Clerk of this court is directed to send a copy of this opinion to the Warden of the Indiana State Prison at Michigan City, Indiana, in order that he may determine whether Burns' Ind. Stat. Anno. § 9-3307 (Acts 1947, ch. 189, § 7, p. 625) is applicable to the facts in this case, and whether the so-called "writ room" of that institution is subject to censorship because of its participation in this proceeding.

Arterburn, C. J., Landis & Myers, JJ., concur.

Jackson, J., concurs in the result.

NOTE.—Reported in 203 N. E. 2d 673.